# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE:<br><br>**JASON J. BARTH**<br><br>DEBTOR. | CASE NO.: 21-BK-06380<br><br>CHAPTER 7<br><br>HON. JANET S. BAER<br>U.S. BANKRUPTCY JUDGE<br><br>**ZOOM HEARING**<br>HEARING DATE: NOVEMBER 10, 2021<br>HEARING TIME: 1:00 P.M. |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on **November 10, 2021, at 1:00 p.m.**, I will appear before the Honorable Janet S. Baer, or any judge sitting in that judge's place, and present the **U.S. Trustee's Moton to Dismiss Chapter 7 Case**, a copy of which is attached.

**This motion will be presented and heard electronically using Zoom for Government.** No personal appearance in court is necessary or permitted. To appear and be heard on the motion, you must do the following:

**To appear by video**, use this link: https://www.zoomgov.com/. Then enter the meeting ID and password.

**To appear by telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666. Then enter the meeting ID and password.

**Meeting ID and password**. The meeting ID for this hearing is 160 731 2971 and the password is 587656. The meeting ID and password can also be found on the judge's page on the court's web site.

*/s/ David Paul Holtkamp*
David Paul Holtkamp, Trial Attorney
OFFICE OF THE U.S. TRUSTEE
219 S. Dearborn Street, Room 873
Chicago, Illinois 60604
(312) 353-5014

# CERTIFICATE OF SERVICE

I, David Paul Holtkamp, an attorney, certify that I served a copy of this notice and the attached motion on each entity shown on the attached list at the address shown and by the method indicated on the list on November 3, 2021, before 5:00 p.m.

*/s/ David Paul Holtkamp*

**SERVICE LIST**

**Registrants Served Through the Court's Electronic Notice**:

| | |
|---|---|
| David Paul Holtkamp: | David.Holtkamp@usdoj.gov |
| Patrick S. Layng: | USTPRegion11.ES.ECF@usdoj.gov |
| Ronald R. Peterson: | rpeterson@jenner.com, rpeterson@ecf.axosfs.com; docketing@jenner.com |
| David M. Siegel: | davidsiegelbk@gmail.com, R41057@notify.bestcase.com; johnellmannlaw@gmail.com |

**Parties Served via First Class Mail**:

Jason Barth
636 Sycamore Lane
Wheeling, IL 60090

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE:<br><br>**JASON J. BARTH**<br><br>DEBTOR. | CASE NO.: 21-BK-06380<br><br>CHAPTER 7<br><br>HON. JANET S. BAER<br>U.S. BANKRUPTCY JUDGE<br><br>**ZOOM HEARING**<br>HEARING DATE: NOVEMBER 10, 2021<br>HEARING TIME: 1:00 P.M. |

## U.S. TRUSTEE'S MOTION TO DISMISS CHAPTER 7 CASE

NOW COMES PATRICK S. LAYNG, the United States Trustee for the Northern District of Illinois (the "*U.S. Trustee*"), by his attorney, David Paul Holtkamp, and moves this Court to enter an order dismissing the Chapter 7 case of Jason Barth (the "*Debtor*") under 11 U.S.C. §§ 707(b)(1) and (b)(3). In support of the request, the U.S. Trustee alleges as follows:

## INTRODUCTION

1. The Debtor and his non-filing spouse earn just short of $164,000 per year. Their schedules reflect that they take home $9,816 per month. Of that take home pay, $4,974 is earned by the Debtor and $4,842 per month is earned by his non-filing wife. However, the Debtor claims $3,629 of his wife's income is not regularly used for household expenses, that is, it is used to pay her own personal debts and expenses (not his or their family's expenses). This includes making payments on a 2019 Chevy Tahoe ($851/mo.), a 2019 Dodge Ram ($691/mo.), 3 credit cards ($850/mo.), and a personal loan ($685/mo.). By asserting that luxury items such as 2 new vehicles were his

— 1 —

wife's expenses only (rather than household expenses) the Debtor was not required to use the IRS standards for such expenses under the means test. The difference between the IRS standards and actual payments the Debtor used by asserting both vehicles were his wife's is the difference between the presumption arising and it not.

2. However, there is no need to dwell on the means test. Under 11 U.S.C. § 707(b)(3) this case should be dismissed because the totality of the Debtor's financial circumstances demonstrates abuse. The Debtor's schedules and means test demonstrate a significant amount of gamesmanship, not just to pass the means test, but to reflect negative income on Schedule J. But they do not reflect reality. On paper the Debtor and his wife[1] have arranged their financial affairs so that she pays for luxury items (2 new vehicles and her personal loans), and he pays nearly all the household expenses, leaving him with no monthly income and purportedly no luxury expense of his own to question. But the Debtor testified that the 2019 Dodge Ram is actually his vehicle that was just titled in his wife's name. The Debtor's wife also testified that her 2019 Tahoe is used for household purposes and her debts are household debts.

3. The Debtor cannot assert that all luxury items and his wife's debts must be paid 100% while asserting his family's everyday expenses leave him with nothing to pay his own creditors. With a little belt tightening and a reasonable allocation of family expenses between the Debtor and his wife, the Debtor could repay a significant amount of debt. This case should be dismissed.

---

[1] The Debtor's wife filed her own petition, case number 11-04363 on February 2, 2011. In that case, she listed just under $104,000 in unsecured debt. She received a discharge on May 24, 2011.

## JURISDICTION

4. Movant is the U.S. Trustee and he brings this motion pursuant to §§ 707(a) and 707(b) of the Bankruptcy Code.

5. This Court has jurisdiction to determine this motion under 28 U.S.C. § 157(b)(2)(A) which this Court may hear and determine under IOP15(A) of the United States District Court for the Northern District of Illinois.

## BACKGROUND

6. The Debtor filed this case on May 16, 2021, under chapter 7 of the Bankruptcy Code. *See* Petition, Dkt. No. 1.

7. The Debtor filed his schedules, statement of financial affairs, and related documents on the same day. *See id.*

8. The Debtor claims that his debts are not primarily consumer debts. *See id*, p. 6 of 53, q. 16.

9. The Debtor's total general unsecured debt is $247,863. *See id.,* p. 8 of 53.

10. Of the Debtor's unsecured debt, $91,245 is for student loans, $56,184 is a deficiency on a repossessed pickup truck (a 2019 Chevy Silverado), and the rest appears to be personal loans and credit card debts. *See id.,* pp. 21-23 of 53.

11. The Debtor's total secured debt is $302,464. *See id.*

12. The secured debt is comprised of a mortgage on the Debtor's primary residence and a security interest on a time share in Las Vegas. The Debtor would like to retain both. *See id.* p. 19 of 53.

13. Schedule I reflects that the Debtor and his non-filing spouse earn about $7,018 and $6,648 per month respectively, or $163,992 annually together. *See id.,* p. 27 of

53.

14. After payroll deductions, the Debtor and his non-filing spouse take home about $4,974 and $4,842, per month respectively, or about $9,816 per month together. *See id.,* p. 28 of 53.

15. The Debtor claims that his wife has separate expenses and debt payment each month of the following:

| Wife's Debt Payment or Expense | Amount |
|---|---|
| 2019 Tahoe | $ 851.00 |
| Student Loans | $ 210.00 |
| Kohl's Card | $ 100.00 |
| Best Egg Loan | $ 685.00 |
| Vehicle Insurance | $ 142.00 |
| Aflac | $ 28.00 |
| CitiBank Credit Card | $ 250.00 |
| AA Credit Card | $ 500.00 |
| Verizon | $ 200.00 |
| 2019 Dodge Ram | $ 691.00 |
| Total: | $ 3,657.00 |

*See id.,* p. 31 of 53.

16. Thus, after all the Debtor's wife's own debts are paid each month, she only has about $1,185 ($4,842 - $3,657) per month to pay household expenses.

17. Those other household expenses include: the mortgage ($2,350), utilities ($736), food and housekeeping ($1,325), clothing etc. ($180), transportation ($400), and timeshare property ($177). *See id.*

18. The chapter 7 trustee held the 341 meeting of creditor on June 14, 2021, but continued it multiple times, the last of which was to October 27, 2021. *See* Dkt. No 19.

19. The last day for the U.S. Trustee to file this motion is November 15, 2021. *See* Dkt. No. 17. Therefore, this motion was timely filed.

## ARGUMENT

### I. THIS CASE SHOULD BE DISMISSED AS AN "ABUSE" UNDER §§ 707(B)(1) AND (B)(3).

20. This case should be dismissed under 11 U.S.C. 707(b)(1). Under § 707(b)(1) the Court should dismiss a chapter 7 case filed by an individual debtor whose debts are primarily consumer debts, which this case is, if it finds that granting relief would be an abuse of the provisions of chapter 7. *See* 11 U.S.C. § 707(b)(1). Section 707(b)(3) directs courts to consider whether the case is an "abuse" of Chapter 7 based on several factors. Specifically, the court "shall consider" whether the case was filed in "bad faith," or whether "the totality of the circumstances of the debtor's financial situation ... demonstrates abuse." 11 U.S.C. §§ 707(b)(3)(A); 707(b)(3)(B). Here, the totality of the Debtor's financial circumstances demonstrate abuse.

21. There are a number of factors the Court should consider under a § 707(b)(3) totality of the circumstance's analysis. "Those factors include what is generally recognized as the primary, albeit not necessarily conclusive, factor, namely [(1)] the debtor's 'ability to repay his debts out of future earnings,' as well as such other factors as [(2)] 'whether the debtor enjoys a stable source of future income, [(3)] whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code,' and [(4)] whether he was forced into Chapter 7 by unforeseen or catastrophic events." *In re Corridori*, 2010 WL 3522122, at *1 (Bankr. D. Mass. Sept. 1, 2010) (citing *In re Lamanna*, 153 F.3d 1, 4 (1st Cir. 1998)); *In re Krohn*, 886 F.2d 123, 126 (6th Cir.1989);

— 5 —

*In re Lorenca*, 422 B.R. 665, 669 (Bankr. N.D. Ill. 2010) (citing *In re Cutler*, 2009 WL 2044378, at *3 (Bankr. S.D. Ind. July 9, 2009)).

22. Therefore, the most relevant factor when assessing abuse under § 707(b)(3) is the debtor's ability to repay his debts. *See In re Smith*, 2016 Bankr. LEXIS 4508, at *7 (Bankr. N.D. Ill. Dec. 27, 2016) (Goldgar, J.) ("ability to pay is 'a primary and potentially sufficient consideration'."); *In re Costello*, 2002 WL 1821663 at *4 (N.D. Ill. 2002) ("[f]ive of six courts of appeals to address the 'substantial abuse' standard agree that the 'primary' or 'principal' factor is the debtors' ability to repay [their] debts."). *see also, In re Behlke*, 358 F.3d 429, 437 (6th Cir. 2004); *In re Green*, 934 F.2d 568 (4th Cir. 1991); *In re Lorenca*, 422 B.R. 665 (Bankr. N.D. Ill. 2010). The analysis of this factor includes a determination of whether the debtor's budget includes excessive or unreasonably high expenses. *In re Bacardi*, 2010 WL 54760, at *4 (Bankr. N.D. Ill. Jan. 6, 2010). It also includes whether the debtor can rearrange his affairs without significant hardship to free up funds to make a meaningful distribution to creditors. *See id*.

A. **The Ability to Repay Factor Favors Dismissal.**

23. First, the ability to pay test is generally governed by income and expenses in Schedules I and J. *In re Lipford*, 397 B.R. 320, 328 (Bankr. M.D.N.C. 2008) ("The Court will evaluate the Debtors ability to pay by considering their income and expenses as reported on their Schedules I and J."). The Debtor's Schedules I and J as filed reflect a negative $177 per month in net income. But that amount includes all the Debtor's wife's monthly debt payments, as well as luxury items such as two 2019

vehicles (a 2019 Tahoe and a 2019 Dodge Ram) and a time share in Las Vegas. It also includes a personal loan from Best Egg to the Debtor's wife that she is repaying at $685 per month that is paid off or should be paid off soon. In total, the Debtor asserts that his wife's debt payments and expenses are $3,657 per month, inclusive of $1,684 per month just for the 2019 vehicles.

24. This is inappropriate. As Judge Squires held some time ago:

> While a nondebtor spouse can understandably be expected to pay for certain family expenses in amounts greater than the Debtor, there is no compelling logic, as the Debtor argues, to have some reasonably necessary expenses paid 50/50 while others are borne by the spouse at a much higher percentage, especially the nonessential luxury items, such as vacation home, timeshare, housekeeper, hairdresser and manicure expenses. True enough, some of those items are purportedly to be paid for by the spouse from his income, but the Debtor has the direct or indirect benefit and enjoyment of same. It is not appropriate for the Debtor to "cherry pick" the family expense budget and have luxury items paid for through allocation to the nondebtor spouse so that the net effect is to maintain a luxurious lifestyle, but only pay a small dividend to unsecured creditors.

*In re McNichols*, 249 B.R. 160, 170 (Bankr. N.D. Ill. 2000).

25. The Court there went on to hold that "the Debtor chose to file bankruptcy and expenses that are 'reasonably necessary' are not necessarily those related to the pre-petition lifestyle to which the Debtor has become accustomed. The luxuries that the Debtor enjoyed prior to filing bankruptcy should not be approved after filing when through the ploy of payments allocated to the spouse, the Plan proposes to pay only a very small fraction of the amounts owed to her unsecured creditors." *See id.* at 170-71.

26. While *McNichols* was a chapter 13 case, the same reasoning holds true in chapter 7. The Debtor cannot "cherry pick" family expenses that he believes will not lead

— 7 —

to an objection and then claim luxury items, such as two new expensive vehicles are his wife's expenses. The Debtor directly or at least indirectly receives the benefit of these items. In fact, the Debtor testified at his 2004 examination that the 2019 Ram was actually his truck that he and his wife purchased and put in her name only after his prior pickup truck was repossessed (leading to $54,000 of the debt he wants to discharge). His wife also testified at her examination that she uses the 2019 Tahoe as a family vehicle and that the Verizon bill is actually the Debtor's. The Debtor cannot expect to file for bankruptcy and then subsidize the payment of his wife's debts and their joint luxury items and then claim that he has nothing left to pay his own creditors.

27. It also may be true that a non-filing spouse should not be required to repay the filing spouse's debts, but the argument goes both ways. The Debtor should not be allowed to use his income to repay the debts of the non-filing spouse instead of his own. *See e.g., In re Berndt*, 127 B.R. 222, 225 (Bankr. D.N.D. 1991). The Debtor claims $9,993 in expenses on Schedule J of which he claims $3,657 are his wife's separate debts. That leaves $6,336 in joint expenses such as their mortgage, utilities, transportation, food, *etc*. The Debtor and his spouse each earn about the same amount of money so they should both be expected to contribute about the same each month to maintain their household. Thus, the Debtor's share of family expenses should be about half of the total family expenses of $6,336 or about $3,138 per month. The

Debtor takes home $4,974 per month, and therefore if the joint expenses were allocated equally the Debtor would have $1,836 per month to repay debt. That is $110,000 over 60 months available to repay creditors, which is not an insubstantial amount.

28. Even if the Debtor's 2019 pickup truck is allocated to him at $691 per month, the Debtor would still have $1,145 per month available to repay creditors or $68,700 over 5 years. But a 2019 pickup truck is a luxury item in any event, and the Debtor should be required to engage in some modest belt-tightening to be fair to his creditors, and to align his expenses more closely with his income. But the Debtor does not want to sacrifice the lifestyle to which he and his wife have become accustom. Nor does he want to allocate the joint expenses equally because doing so would reveal that he has sufficient income to repay a substantial amount of his debt. Instead, it appears that the Debtor would rather subsidize the payment of his wife's debts and luxury expenses instead of using that income to repay his own creditors. But the Debtor's creditors cannot be required to bear the burden of repaying the Debtor's non-filing spouse's debts or to keep the Debtor and his non-filing spouse in a lifestyle that they cannot afford.

29. This factor weighs heavily in favor of dismissal.

**B.** **<u>The Debtor has Stable Income.</u>**

30. The second factor is whether the Debtor enjoys stable income also favors dismissal. The Debtor's Schedule I reflects that the Debtor is a public-school teacher paying into a pension fund. The Debtor's non-filing spouse is likewise a public-school teacher. Neither the Debtor nor his non-filing spouse have asserted that they expect

their employment to be terminated or expect to earn less money in the near future. This factor favors dismissal.

**C.   The Debtor is Eligible for Chapter 13.**

31. Third, there is no apparent reason that the Debtor would not be eligible for chapter 13. With that option being available, the factor weighs in favor of dismissal under § 707(b)(3).

**D.   There was no Calamity that Caused the Filing.**

32. Fourth, the Debtor has not asserted any calamity or catastrophic event that caused the bankruptcy. Thus, this factor also favors dismissal.

33. Therefore, because the Debtor's debts are primarily consumer debts, and granting relief under this chapter would be an abuse, this case should be dismissed under 11 U.S.C. § 707(b).

## II.   CONCLUSION.

WHEREFORE, the U.S. Trustee requests the Court to enter an order dismissing the Debtor's case pursuant to §§ 707(b)(1) and (b)(3) of the Bankruptcy Code and for such other relief as is just.

DATED: <u>November 3, 2021</u>     PATRICK S. LAYNG
                                   UNITED STATES TRUSTEE


                                   By: */s/ David Paul Holtkamp*
                                   David Paul Holtkamp, Trial Attorney
                                   OFFICE OF THE U.S. TRUSTEE
                                   219 S. Dearborn, Room 873
                                   Chicago, Illinois 60604
                                   Main: (312) 353-5014
                                   Cell: (202) 567-1489